## Case No. 8,586.

### LUBKER v. The A. H. QUINBY.

[7 Wkly. Notes Cas. 509; 8 Reporter, 806.[1]]

Circuit Court, D. Delaware. 1879.

SALVAGE—EFFECT OF TENDER AND PAYMENT INTO COURT—RIGHT TO DEPENDS ON THE WHOLE SUM INVOLVED — APPEAL TRIED DE NOVO — COSTS—SOUND DISCRETION OF COURT.

1. Costs in admiralty are given or refused according to the sound discretion of the court, which is to be exercised in accordance with settled practice, for the furtherance of justice, and with reference to the facts of the case.

2. Though the question of costs is perhaps not per se the proper subject of an appeal, yet it is reviewable when a case is properly in the appellate court.

3. On appeal in a case of salvage, the whole case—as well the adjudication of the amount of salvage as incidently the costs—is before the appellate court for review; and that tribunal is not bound by the decree of the court below, but can decree more, or less, or nothing.

4. In cases of salvage, when a libellant has refused a tender, and subsequently recovers only the same amount as was tendered him, he is always chargeable with his own costs which have accrued since the tender was made; and generally with the owner's costs also, unless there are some special circumstances to modify the rule.

5. A tender in a respondent's answer of a certain sum as compensation for salvage services, and payment into court in pursuance thereof, is in no sense an admission of the libellant's right to such sum; and if the tender be refused, and a decree subsequently made against the respondent for the same sum as was tendered, he still has the right of appeal, and the amount decreed against him is to be considered in deciding whether there is a sufficient sum involved to give the right of appeal.

Appeal by the owner and claimant from a decree of the district court for the district of Delaware.

Libel for salvage. The facts of this case were as follows. On May 1, 1877, early in the morning the libellant discovered the schooner respondent about a mile outside of the Delaware breakwater, and about four miles from the Delaware shore, damaged by a collision with a bark. She had lost both her masts and stanchions, and rail on port side; her windlass was broken, much of her rigging overboard and fouled with the bark, and there were forty-five fathoms of her anchor-chain out, attached to her port anchor. The schooner was laden with lumber, so that her deck was only about a foot from the water. The sea at the time was rough, and the wind high, but it was not a gale. The libellant put off from Lewes in a surfboat, accompanied by four men and went to the schooner's relief. Arrived at the schooner, he and the captain executed a paper, by which it was agreed that, if the libel-

---

[1] [8 Reporter, 806, contains only a partial report.]

lant brought the schooner safely to the shore he should be paid "what the board of underwriters say is just and true," or, "if not particularly agreed on the compensation shall be such as is just in the premises." The libellant then went to work, and in about three hours had the schooner safe behind the Breakwater. They afterwards brought her to Wilmington. The respondent declining to appear before the board of underwriters, and no other umpire being agreed upon, on May 16, 1877, libellant filed his libel against the schooner, tackle, etc. On May 26, 1877, respondents tendered him the sum of $400 for compensation, and $63 for costs incurred to date, which was refused. On June 1, 1877, respondents filed their answer renewing the above offer, and paid the sum into the registry of the district court.

Upon the hearing, the court (Bradford, District Judge) decreed the libellant the sum of $400 as ample compensation for services rendered, and, on the question of costs, decreed against the respondent, saying: "On the question of costs, on some reflection, I have decided that the respondent pay all the costs of this suit. It is true the libellant has not recovered more than the amount tendered, but he has recovered a claim originally refused; and if he pursued it in good faith under an honest impression that he was entitled to more, which appears to have been the case, I am not prepared to put him into his own costs because he did not get a larger sum awarded in a decree." From this decree the claimant appealed to the circuit court.

The court (McKennan, Circuit Judge) denied the motion, saying: "Ordinarily, the amount of the decree, in an admiralty suit, is determinal of the 'matter in dispute,' and of the consequent right of appeal by the party against whom it is rendered. In this case the decree was in favor of the libellant for the sum of $400; but the respondent's right of appeal is contested on the ground that she offered to pay that amount to the libellant as a compensation for the salvage service described in the libel, together with the accrued costs, and paid the said sum and costs into the registry of the court. This was not, however, an unqualified admission of a sum due to the libellant, but a conditional offer to pay it in full settlement and compromise of his claim and upon a discontinuance of the suit. By the libellant's refusal of this offer, his whole claim was open to contention. He was not relieved from the burden of establishing the allegations of his libel by appropriate independent proofs. Nor was the respondent precluded from showing the actual value of his services. All the proofs, on both sides, the court must consider, and its decree must necessarily be taken as a judicial measure of the pecuniary merit of the libellant's services, determined by the import and weight of all the evidence in the case. In-

asmuch as the case could only be adjudged according to its merits, unaffected by the rejected offer, the libellant's claim, whether more or less, was the matter in dispute, and the amount at which this was fixed by the decree of the court determines the right of appeal. The motion to dismiss the appeal is denied."

(The argument on the motion to dismiss the appeal has been combined with the argument on the appeal.)

E. G. Bradford, Jr., for libellant.

The amount of salvage awarded, resting largely in the discretion of the court, will not on appeal be altered upon slight grounds, or for inconsiderable differences of opinion. The Sybil, 4 Wheat. [17 U. S.] 98. The Dos Hermanos, 10 Wheat. [23 U. S.] 306, 310; Hobart v. Drogan, 10 Pet. [35 U. S.] 108, 119; Tyson v. Prior [Case No. 14,319]; The Emulous [Id. 4,480]; The Boston [Id. 1,-673]; Cushman v. Ryan [Id. 3,515]; The Narragansett [Id. 10,017]. Costs in admiralty rest in the discretion of the court, and are not per se appealable. Barnett v. Luther [Id. 1,025]; Shaw v. Thompson [Id. 12,726]; The Moslem [Id. 9,876]; The Martha [Id. 9,144]; Canter v. American & O. Ins. Co., 3 Pet. [28 U. S.] 307, 319; U. S. v. The Malek Adhel, 2 How. [43 U. S.] 210, 237. It being improper to reverse the decree as to the amount awarded as salvage, it should be affirmed as to costs. The tender and payment of the money into court, while it might influence, could not defeat, the exercise of discretion as to costs; nor would the court have the power, by allowing such payment into court, to debar itself from the exercise of that discretion. The doctrine of tender at law has no application to claims for uncertain damages. 2 Saund. Pl. & Ev. *834. The doctrine of tender, in admiralty, as applied to salvage cases, is altogether different, and rests upon the ground of discouraging the prosecution of unconscionable demands of salvors, after an offer of manifestly ample compensation has been made by the claimant. But where a salvor has acted in good faith, as in the present case, it should clearly appear that his demand is greater than could have been made by a man of ordinary intelligence, in the exercise of an honest opinion as to the merit of his services, before the court should disallow his costs, upon the ground of refusal to accept a sum less than that claimed by him. This is particularly the case where, as in the present instance, the claimant has been guilty of unfair and oppressive conduct toward the salvor. If, however, a claimant in a salvage case can, as to costs, claim the benefit of a tender according to its rigid effect at law, the libellant in the same case should derive whatever benefit would have accrued to him from that tender and the payment of money into court, if made in a court of law. In that event the $400 paid into court was not a matter in dispute, and the circuit court has no jurisdiction, for its jurisdiction only attaches when the amount in dispute exceeds $50, exclusive of costs. Desty, Fed. Proc. 56.

The sum of the matter in dispute, as to a respondent, depends upon the disputed amount of libellant's demand, so far as that disputed amount is embraced in the decree of the district court. Shirley v. Situs [Case No. 12,796]; Olney v. S. S. Falcon, 17 How. [58 U. S.] 19; 2 Abb. Pr. (N. S.) 234, 235. The amount in dispute here, so far as the claimant is concerned, did not exceed $50, exclusive of costs, because the $400 was admitted by the answer to be a just compensation, and the payment of it into court was a conclusive admission of record to that effect, and was equivalent to a payment pro tanto. Hubbard v. Knous, 7 Cush. 556; Spalding v. Vandercook, 2 Wend. 431; Johnston v. Columbian Ins. Co., 7 Johns. 315; Murray v. Bethune, 1 Wend. 191; Malcolm v. Fullarton, 2 Durn. & E. [Term R.] 645; Vaughan v. Barnes, 2 Bos. & P. 392; 1 Tidd, Prac. *622, *624, *626. The only matter, then, in dispute, was the libellant's demand over and above that sum, and as to this the decree was in claimant's favor.

Mr. Rumford, for respondent.

On an appeal the whole case, including the question of costs, comes before the appellate court de novo. The fact that a tender was made to prevent further litigation, which was rejected, and the offer renewed in the answer, and the amount tendered paid into the registry of the court, in no way limits or controls the sound discretion of the court in awarding salvage compensation. Such payment is merely a part of the formal requisites of a tender in admiralty. If, from the facts of the case, the court, in the exercise of its sound discretion, should determine that the libellant was not entitled to so large a sum as had been tendered, a less sum would be decreed. The Jonge Bastiaan, 5 C. Rob. Adm. 323; The General Palmer, 2 Hagg. Adm. 180; The Frederick, 1 Hagg. Adm. 211; Abb. Shipp. marg. 573; 2 Conk. Adm. 443; 2 Pars. Mar. Law, 732.

The rule appears to be that if a party does not accept what is tendered to prevent litigation, but proceeds with the suit, and recovers no more than the sum tendered, such party shall be liable for his own costs; and if it appear that the proceedings have been vexatiously pursued, he shall also be liable for the costs of the other party. Abb. Shipp. marg. p. 573, § 7; 2 Pars. Mar. Law, 732, 733; 2 Conk. Adm. 441–443; The Paris, 1 Spinks, 289, 291; The Clifton, 3 Hagg. Adm. 118; The Eleanora Charlotta, 1 Hagg. Adm. 156; The John & Thomas, Id. 157, note 1; The Frederick, Id. 211; The Black Boy, 3 Hagg. Adm. 386, note 3; The Emu, 1 W. Rob. Adm. 16; Hessian v. The Edward Howard [Case No. 6,436]; The Batavier, 1 Spinks, 169;

Shaw v. Thompson [Case No. 12,726]; The H. B. Foster [Id. 6,290]. A tender to prevent litigation is no admission of the justice of the demand, but merely an offer to escape the inconvenience of litigation. The Frederick, 1 Hagg. Adm. 218.

STRONG, Circuit Justice. After a careful review of the evidence, I am of opinion that, while the sum awarded is "ample compensation," it is not excessive. It is true the services rendered were of the lowest grade; the risk incurred and the skill and appliances required not great; and the time devoted to the service very short; but there was considerable expenditure in bringing the schooner to Wilmington, and the salvage allowed bears no undue proportion to the value of the property saved. I shall therefore affirm the decree of the district court so far as it awarded $400 to the libellant. But I cannot concur with that court in condemning the respondent to pay all the costs of the suit. Costs in admiralty are undoubtedly given or refused at the discretion of the court; but that discretion is to be exercised in accordance with settled practice, for the furtherance of justice, and with reference to the facts of the case. Here the libel was filed on the 16th day of May, 1877, about two weeks after the salvage services rendered. Ten days thereafter, May 26, the claimant, the owner of this schooner tendered to the libellant the sum of $400, as compensation for the services rendered, and also $63 the full amount of costs incurred to that day. The tender was refused. On the 1st June, 1877, the respondent filed her answer, in which she renewed the offer of $463, and concurrently she paid that sum into the registry of the court. The sufficiency of the tender is not controverted, and it is therefore to be considered what its effect is. I think, as the libellant recovers no more than $400, no more than he might have had on the 26th day of May, 1877, he is justly chargeable with the costs that have accrued since that date, because they have been needlessly made by him. Such I understand to be the general rule in salvage cases in courts of admiralty. It is certainly the English rule, and, so far as the decided cases show, it is the rule in this country. It is sufficient to refer to a few decisions, most of which were called to my attention during the argument. Thus, in the case of The Vrouw Margaretha, 4 C. Rob. Adm. 103, Sir Wm. Scott said: "If a tender be pronounced sufficient, the court will make the party who refuses such an offer liable not only to his own costs but also to those of the other party, if it shall appear that proceedings have been vexatiously pursued." The John & Thomas, 1 Hagg. Adm. 157, note 1. In The Emu, 1 W. Rob. Adm. 15, where the tender was held sufficient, no costs were given (against the salvors), but the court said that in future where a tender was pronounced for, costs would always be given. In The Batavier, 1 Spinks, 169, a tender was held sufficient, and costs were adjudged against the salvors. The Albion, 2 Hagg. Adm. 180, note 2; The Clifton, 3 Hagg. Adm. 124.

It is true the rule is not an unbending one. It may yield to circumstances in the particular case. It is, almost without exception, ruled that when the tender is held sufficient, the salvor is not entitled to subsequent costs. But whether he must pay the costs of an owner incurred after the refusal of a sufficient tender is not so well settled. In the case of The Queen, 1 Spinks, 175, note, Dr. Lushington said: "The rule I have endeavored to follow is not to bind myself in all salvage cases to give costs against salvors, unless I think the tender was so large that the salvors, in the exercise of a sound discretion, could not do otherwise than accept it. Here the tender is sufficient; but it is not so much as to lead me to blame the salvors for not accepting it. I therefore pronounce for the tender, but without costs." In a subsequent case (The Paris, 1 Spinks, 289) he said: "I consider it my duty to pronounce for the tender, and, I am sorry to say, to condemn the parties in the costs. That is a measure which I am reluctant to pursue; though, according to practice in other courts, when the tender is considered sufficient, they uniformly follow that course." Such, then, is the general rule. I do not question that there may exist in some cases sufficient reason for departing from this rule. There may exist a reasonable doubt respecting the sufficiency of the tender or the conduct of the owners may have been such as to justify imposition of the costs or a part of the costs upon them. Public policy required that favor should be shown to the salvors when they have acted in good faith, without any disposition to oppress unfortunate owners. But I find no such reasons existing in the present case. The ingenious argument made on behalf of the libellant urges that the owner exhibited bad faith in not appearing before the Philadelphia board of underwriters, to submit to that board the question what sum was due to the libellant. To this I cannot assent. It is in evidence that when the libellant came on board the schooner, and before he began his salvage services, he obtained from the master of the schooner a contract that he should receive for his salvage services such sum of money as the board of underwriters of and in the city of Philadelphia should, within a reasonable time, award to him as being justly due for his salvage services; or, if the amount of said compensation should not be otherwise determined, that he should receive such compensation as should be just in the premises. It is proved that the owner did not appear before the board when notified by the libellant to appear; and this is charged as bad faith and a breach of the contract made by the master of the schooner. But the contract, admitting it to have been fairly made

and binding, did not obligate the owner to submit the determination of the amount due to the arbitrament of the board of underwriters. It was in the alternative. She was at liberty to submit the assessment to the board, or to tender or submit to such compensation as was just. She chose the latter, as she had the right to do. She made a sufficient tender within what appears to me to have been a reasonable time. There was, then, no breach of faith or of the contract on her part. On the contrary, I think the conduct of the libellant was harsh and oppressive. He never exhibited the contract to the owner or her agent until after the schooner was seized, and after the tender was made. He insisted on a determination by the underwriters, practically refusing to the owner her alternative right. He filed his libel before a reasonable time had elapsed, I think, for a settlement of the amount due; and when the tender was made, on the 26th day of May, 1877, after no unreasonable delay, he refused to accept it, saying "he would lose $100 more before he would take that." The impression made upon my mind by all this is that the conduct of the libellant was oppressive and arbitrary, dictated more by the consciousness that he had an advantage than by a desire to secure a just and reasonable settlement. Certainly, there is nothing in all these facts which can justify a departure from the rule respecting the imposition of costs. I feel constrained, therefore, to order that the libellant shall pay all the costs that have accrued since May 26, 1877, when the tender was made. While salvors are to be treated with favor, they are not to be encouraged in oppressing unfortunate owners.

It was urged in argument that the decision of the district court on the subject of costs is not reviewable on appeal. I think otherwise. It is true, it has been said that the matter of costs is not per se the proper subject of an appeal, and that notice can only be taken of it incidentally as connected with the principal decree, when the correctness of the latter is directly before the court. The Malek Adhel, 2 How. [43 U. S.] 210, 237. But here there is a general appeal of the whole case, including the ascertainment and determination of the amount due the libellant, and it has been contended that the sum awarded by the district court was excessive. The entire case is before me, as well the adjudication of the salvage as incidentally the costs. I am not bound by the amount of the unaccepted tender. I can decree either more or less, or nothing. What is in controversy now is the amount of salvage. Costs are only an incident, though it unfortunately happens in this case that the incident is greater than the principal, in consequence, as I think, of the unjustifiable course of the libellant.

I notice another position taken by the proctor of the salvor. It is that inasmuch as the respondent tendered $400, the amount in controversy in this appeal does not exceed $50, and therefore that the circuit court has no jurisdiction. This position cannot be maintained. The appeal brings the whole case before me. The appellant contends against the entire claim of the libellant. It is true she tendered $400, but the tender not having been accepted, and the libellant having chosen to keep the case open, she is not bound by the amount of her tender. I am at liberty to award a less sum if, in my judgment, a less sum would be sufficient compensation. If a tender be made in admiralty, the court will afterwards, for good cause, reduce the amount, and decree a less sum to the libellant. The General Palmer, 2 Hagg. Adm. 176.

I do not deem it necessary to say more. From what I have said my conclusion will be manifest. I shall decree against respondent the sum of $400, together with $63 costs, and I shall direct that the costs of this appeal and all costs made since May 26, 1877, be paid by the libellant. Decree accordingly.